– FOR PUBLICATION –

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **R.V. Individually and On Behalf of S.V-W., a Minor,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| | **NO.  16-2277** |
| **PEDRO A. RIVERA, COMMONWEALTH OF PENNSYLVANIA, COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF EDUCATION,** | |
| **Defendants.** | |

## OPINION

### I.      INTRODUCTION

Plaintiff, R.V., is the mother of S.V-W., a child with a disability under the Individuals with Disabilities Education Act ("IDEA"), who brings this action individually and on her child's behalf challenging a Special Education Hearing Officer's decisions in two related IDEA due process matters and also seeking attorneys' fees.  The child had attended the Walter D. Palmer Leadership Learning Partners Charter School ("Palmer") in Philadelphia, before it closed down operations.  The issues before the court on Defendants' motion to dismiss, are whether the Pennsylvania Department of Education ("PDE") was a proper party to the due process hearing and whether, if the answer to that question is yes, PDE must pay Plaintiff attorneys' fees.

### II.      FACTUAL AND PROCEDURAL BACKGROUND

S.V–W. attended Palmer from 2007 until its closure in December 2014.  More than a year after the school shut down, his mother filed two IDEA due process complaints pursuant to 20 U.S.C. § 1415(b)(6) with the Pennsylvania Office of Dispute Resolution ("ODR"), one naming

Case 2:16-cv-02277-WB   Document 29   Filed 12/05/16   Page 2 of 12

Palmer as a Respondent, and the other naming PDE.  She alleged that Palmer had failed to provide S.V–W. with a free appropriate public education ("FAPE") as required by IDEA and sought compensatory education.  Both complaints were assigned to the same hearing officer, but there the paths diverge.

On the day that he filed the complaints, Plaintiff's counsel reached out to PDE to discuss resolving the complaints prior to a due process hearing.  PDE responded that it was willing to provide compensatory education, but declined to discuss a resolution of the matter before a due process hearing.  In the meantime, it argued to the hearing officer that PDE was not a proper party to the due process proceedings and reported that it had no evidence to contribute to, did not intend to participate in, and would not appear at the hearing.  PDE acknowledged its general supervisory obligations under the IDEA and advised that it intended to provide compensatory services if ordered by the hearing officer.  In light of these representations, the hearing officer dismissed the complaint against PDE as moot.

The due process complaint against Palmer proceeded quite differently.  After a hearing, the hearing officer concluded that Palmer failed to comply with its Child Find[1] obligations under the IDEA, had denied S.V–W. a FAPE and that S.V-W. was "entitled to compensatory education in the amount of one full school day for every school day on which [Palmer] was open, from December 1, 2012 to the last day on which it was open to students in December 2014."  He styled his ruling as "an *advisory order* for compensatory education" noting that Plaintiff had indicated in her complaint she would seek a remedy through PDE pursuant to its responsibilities

---

[1] For a state to be eligible for certain federal education funding, it must adopt "procedures to ensure . . . [all children with disabilities] are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services."  20 U.S.C. § 1412(a)(3)(A); *see also* 34 C.F.R. § 300.111(a) (requiring a state to adopt such procedures); 22 Pa. Code § 14.121 (requiring each school district to adopt such procedures).

2

as an SEA.  Thereafter, Plaintiff's counsel reached out to PDE regarding the compensatory education for S.V–W. and to seek attorneys' fees.  PDE responded that it would provide the compensatory education but not pay any attorneys' fees.

Plaintiff filed this action seeking to vacate the hearing officer's decision to moot the due process complaint against PDE, to have this Court enter the hearing officer's decision in the Palmer due process matter as a judgment against PDE in this action, and to order PDE to pay reasonable attorneys' fees and costs.  Before the Court is Defendants' motion to dismiss.

## III.    RELEVANT LEGAL BACKGROUND

The IDEA requires states to "make available a free and appropriate public education to all children with disabilities residing within their borders."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010).  It accomplishes this by making contingent certain federal funding to State Educational Agencies[2] ("SEAs") and Local Educational Agencies[3] ("LEAs") upon the adoption of plans consistent with its provisions.  *See* 20 U.S.C. §§ 1412, 1413.  When a parent or guardian of a student with disabilities believes that their child has not been provided with a free appropriate public education, they have available to them certain procedural safeguards— statutory avenues of relief.

---

[2] "'State educational agency' means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools . . . ."  20 U.S.C. § 1401(32).  PDE is Pennsylvania's State Education Agency, and it receives relevant federal financial assistance.  *See Battle v. Pennsylvania*, 629 F.2d 269, 273 (3d Cir. 1980).

[3] "'[L]ocal educational agency' means a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools."  20 U.S.C. § 1401(19)(A).  As a charter school under Pennsylvania's Charter School Law, Palmer was an LEA.  *See* 24 Pa. Stat. § 17-1703-A; 22 Pa. Code § 711.3; 34 C.F.R. § 300.209(c).

The applications of those procedural safeguards are central to this case.  One mechanism is the due process hearing—the procedure that the Plaintiff in this case opted to use.[4]  20 U.S.C. § 1415(a); 20 U.S.C. § 1415(b)(6)(A); 20 U.S.C. § 1415(f)(1)(A).  In Pennsylvania, the Commonwealth's Office of Dispute Resolution ("ODR") is responsible for conducting IDEA due process hearings.  *See* 22 Pa. Code § 14.162.

In addition to its due process hearing provision, the IDEA includes a separate method by which a parent may seek to vindicate his or her child's rights under the statute by filing a complaint with the state.  Upon receipt of such a complaint, the SEA must evaluate the complaint and carry out, as necessary, an independent investigation before reaching a final decision containing findings of fact and conclusions.  34 C.F.R. §§ 300.151−300.153.  IDEA regulations contemplate that the state complaint process and IDEA due process are parallel procedures, either of which a parent may opt to pursue in the first instance, but that the due process complaint procedure takes priority over the state complaint procedure.  *See* 34 C.F.R. § 300.152(c)(1) (where a state complaint is filed that is already the subject of a due process complaint, the SEA must stay the portion of its investigation that is subject to IDEA due process until the due process hearing concludes); 34 C.F.R. § 300.152(c)(2) (providing that a prior due process decision is binding in the event that a later state complaint is made on the same subject matter).  Although representations were made by PDE at oral argument on the motion to dismiss that it had commenced an investigation into S.V−W.'s case, no state complaint had been filed, so this procedural safeguard is not at issue here.

---

[4] This Court has jurisdiction of this matter pursuant to Section 1415 of the IDEA which provides that: "Any party aggrieved by the [hearing officer's] findings and decision . . . shall have the right to bring a civil action with respect to the [due process] complaint . . . in a State court of competent jurisdiction or in a district court of the United States . . . ."  20 U.S.C. § 1415(i)(2)(A).

A third procedural safeguard through which a child's IDEA rights may be protected is found in Section 1413(g) of the IDEA which provides that an SEA must directly provide special education and related services "if the [SEA] determines that the [LEA] . . . is unable to establish and maintain programs of free appropriate public education . . . ." 20 U.S.C. § 1413(g). Defendants' arguments in their motion to dismiss rely heavily on this provision.

## IV.   DISCUSSION

Defendants' arguments are that the due process complaint against PDE was moot, that PDE was not a proper party to a due process hearing because the hearing officer lacked jurisdiction over it, and that, even if the due process complaint against it was not moot and the hearing officer had jurisdiction, PDE's obligations under the IDEA do not extend to attorneys' fees. Each argument challenges only the hearing officer's conclusions of law, and not his findings of fact. Such legal conclusions "are subject to plenary review." *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).

### A.   Due Process Jurisdiction over PDE

Defendants reason that it was Palmer, and not PDE, that was responsible for providing S.V-W. with an education and Palmer, not PDE, that failed to ensure that he received a FAPE. Given that it was not the direct service provider, PDE contends that it was not a proper party to the due process complaint. In support of that argument, PDE turns to Section 1413(g) for the proposition that only if a hearing officer has ordered an LEA to pay compensatory education and the LEA is unable or unwilling to provide those services must the SEA step in.

Section 1413(g), which addresses when an SEA may use federal funds to provide special education services directly to eligible students, provides that: "[a] State educational agency shall use the payments that would otherwise have been available to a local education agency . . . to

provide special education and related services to children with disabilities . . . if the SEA

determines that the local educational agency . . . is unable to establish and maintain programs of

free appropriate public education . . . ."  20 U.S.C. § 1413(g).

PDE acknowledges that Section 1413(g) obligates it to provide compensatory education

services to an eligible student when the LEA is unable or unwilling to do so.  Indeed, its

representation to the hearing officer that it would provide any compensatory education that he

determined S.V-W. was owed was the reason why he dismissed the due process complaint as

moot.  Laudable as PDE's representations may have been, IDEA protections cannot be

subjugated to the good will of PDE, particularly as PDE's representation to the hearing officer

was not that it would provide compensatory education to S.V-W., but that it would do so only

"should th[e] hearing officer conclude that the Student is owed compensatory education."

As a preliminary observation, there is a question as to whether a hearing officer has the

authority to dispose of an IDEA due process complaint on the procedural point that the matter is

moot.  The IDEA explicitly requires that a hearing officer's decision be on "substantive

grounds."  20 U.S.C. § 1415(f)(3)(E)(i).  And, at oral argument on the instant motion, PDE was

unable to identify any authority that carves out an exception to that requirement.  Regardless, the

due process complaint against PDE was not moot.  "A case will be considered moot, and

therefore nonjusticiable as involving no case or controversy, if the issues presented are no longer

live or the parties lack a legally cognizable interest in the outcome."  *In re Surrick*, 338 F.3d 224,

229 (3d Cir. 2003) (citation and quotation marks omitted).  *See also Leonhart v. McCormick*, 395

F. Supp. 1073, 1077 (W.D.Pa. 1975) (noting that "[a] case is moot when a determination is

sought on a matter which, when rendered, cannot have any practical effect on the existing

controversy." (citation and quotation marks omitted)).  Here, the hearing officer's task was to

decide whether S.V-W. had been denied a FAPE and, if so, the nature of the remedy.  PDE acknowledged that it had a "statutory obligation" to provide whatever remedy the hearing officer determined was required—if any.  But, until such time as the hearing officer's decision was rendered, it was unknown whether S.V-W. was entitled to compensatory education and, accordingly, unknown as to whether PDE would be required to provide it.  PDE's warrant that it would comply with the hearing officer's decision did not change the fact that the hearing officer was required to decide whether or not there had been a FAPE violation and, if there had been, fashion some form of meaningful relief.  Viewed *ex ante*, on February 26, 2016, the day the hearing officer issued his decision on the complaint against PDE, it was impossible to predict the outcome of the due process hearing which had not yet occurred.  Therefore, Plaintiff's statutory rights vis-à-vis PDE continued to depend on the outcome of the IDEA due process hearing, and so the due process complaint against PDE was not moot.[5]

Whether the hearing officer had jurisdiction over PDE turns on the interpretation of IDEA's due process provision, Section 1415(b)(6)(A).[6]  PDE contends that a due process complaint cannot be lodged against an SEA unless the SEA is directly involved with the provision of educational services that are the subject of the complaint, for example, when PDE directly provides services pursuant to its Section 1413(g) obligations, or in the early intervention

---

[5] In its briefing and at oral argument, PDE now contends that it has made available to S.V-W. the compensatory education ordered by the hearing officer and that, accordingly, regardless of whether Plaintiff's claims were mooted by PDE's representations to the hearing officer, they are moot now because they have been redressed.  This information is not, however, before the Court as it is not in the administrative record or the complaint.  Even if it were, the issue of whether Plaintiff is entitled to reasonable attorneys' fees remains contested.

[6] Note that this Court has concluded in the context of a case involving another special education student from Palmer that in light of Palmer's insolvency and closure, an IDEA due process complaint against PDE for Palmer's past FAPE violations was ripe for adjudication by a due process hearing officer.  *H.E. v. Palmer*, No. 15-3864, 2016 WL 6276418, at *9 (E.D. Pa. Oct. 27, 2016).  In *H.E.*, the Court expressly declined to address PDE's argument that the hearing officer in that case lacked jurisdiction over it because the argument was untimely raised.  *Id.* at *6 n.6.  The issue is presented squarely to the court here.

context where it serves as a direct service provider.  22 Pa. Code § 14.151(b)(1).  To support this

proposition, Defendants rely on two cases: *R.W. v. Georgia Dep't of Educ.*, No. 07-CV-535,

2007 WL 2915911 (N.D. Ga. 2007), *aff'd*, 353 F. App'x 422 (11th Cir. 2009), and *Chavez v.*

*New Mexico Public Educ. Dep't*, 621 F.3d 1275 (10th Cir. 2010).  Both cases are inapposite

because in both cases the LEA that was the direct service provider during the timeframe subject

to the IDEA due process complaint still existed.  Here, the LEA that was the direct service

provider during the timeframe subject to Plaintiff's due process complaint is a failed charter

school that has ceased to exist.  In light of the emerging consensus in this district that the SEA

assumes responsibility for a failed charter school's FAPE violations,[7] a parent may properly

subject the SEA to an IDEA due process hearing on the allegations made here.

      Contrary to PDE's suggestion, the language of Section 1415(b)(6)(A) does not preclude

bringing a due process complaint against an SEA in the circumstances presented here.  "The

starting point of all statutory construction is the text of the statute."  *G.L. v. Ligonier Valley Sch.*

*Dist. Auth.*, 802 F.3d 601, 611 (3d Cir. 2015).  The language of Section 1415(b)(6)(A) is broad—

it provides that an IDEA due process complaint may be made "with respect to *any matter*" —

subject only to the limitation that it must "relat[e] to the identification, evaluation, or educational

placement of the child, or the provision of a free appropriate public education to [a] child [with a

disability]."  20 U.S.C. § 1415(b)(6)(A) (emphasis added).  By its plain meaning, the limitation

does not regulate the appropriate *respondent* of a due process complaint.  Instead, it regulates the

appropriate *subject matter* of a due process complaint.  As such, its ambit contemplates a

complaint against the SEA, provided that the complaint "relat[es] to the identification,

---

7 *H.E. v. Palmer*, No. 15-3864, 2016 WL 6276418, at *8–*9 (E.D. Pa. Oct. 27, 2016) (Beetlestone, J.*); R.J. v.*
*Rivera*, No. 15-5735, 2016 WL 4366987, at *3 (E.D. Pa. Aug. 16, 2016) (Padova, J.); *Charlene R. v. Solomon*
*Charter Sch.*, 63 F. Supp. 3d 510, 520 (E.D. Pa. 2014) (McHugh, J.).

evaluation, or educational placement of the child, or the provision of a free appropriate public education to [a] child [with a disability]." *Id.* If an SEA may be liable to remedy a defunct charter school's FAPE violations, then the SEA could properly be made to respond to an IDEA due process complaint because the complaint would surely "relate to the provision of a FAPE." *Id.* Thus, the ODR hearing officer had jurisdiction over PDE in this matter.

This conclusion comports with IDEA's legislative structure, the design of which makes an LEA generally responsible for providing each student with a FAPE and an SEA responsible not only for the general supervision of special education but also for ensuring that eligible children are provided with a FAPE. *See Kruelle v. New Castle Cty. School Dist.*, 642 F.2d 687, 696–97 (3rd Cir. 1981) (citing S. Rep. No. 168, at 24 (1975)) (examining the legislative history of the Act, and determining that Congress intended the SEA to be the "central point of accountability."); *Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696*, 951 F.Supp. 867, 891–92 (D. Minn. 1996 ) (SEA bears ultimate and direct responsibility for provision of free appropriate public education); *see also* 20 U.S.C. §§ 1412(a)(6) (SEA responsible for assuring that IDEA procedural safeguards in Section 1415 are met), 1412(a)(11) (SEA responsible for making sure IDEA requirements are met), 1413(h) (federal grant conditioned on SEA satisfaction that all children with disabilities receive a FAPE); 34 C.F.R. § 300.101(b) (state must ensure that FAPE is made available to each eligible child). Thus, underpinning the structure is the clear mandate that the SEA retains ultimate responsibility for ensuring that all children with disabilities under its aegis receive the education that is their due under the IDEA.

It does not follow from this, as PDE fears, that in every instance where an LEA is alleged to have failed to provide a FAPE or otherwise comply with its IDEA obligations an SEA may be named in a due process complaint regarding those allegations. Where there is an existing LEA

that could be held responsible for alleged FAPE violations, then it, and not the SEA, would be the proper party in a due process hearing.  Where, as here, there is no other educational agency to which a parent may look to vindicate her child's rights to a FAPE because the LEA in which the alleged violations occurred has since ceased to exist, the SEA's obligations as the backstop to the state's IDEA obligations kick in.  Accordingly, PDE was a proper party to the IDEA due process complaint in this case.

### B.   Attorneys' Fees and the SEA's Obligations under the IDEA

The final issue raised by Defendants' motion to dismiss is the argument that even if the hearing officer had jurisdiction over PDE and the due process complaint against it was not moot, PDE's obligations under the IDEA do not extend to attorneys' fees.

Under the IDEA's fee-shifting provision, a district court may grant reasonable attorneys' fees to a prevailing party.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  A "prevailing party" is one who has been awarded some relief which brings about a "material alteration of the legal relationship of the parties."  *Buckhannon Bd. and Care Home v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001).  A resolution materially alters the legal relationship of the parties when it "changes the legal relationship between [the plaintiff] and the defendant."  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 855 (3d Cir. 2006) (citation omitted).  Defendants assert that Plaintiff is not a prevailing party.

Whether Plaintiff is a prevailing party must be viewed in the context of the Court's holding that, on the facts presented in the complaint and administrative record, PDE was a proper party to the due process hearing, the hearing officer did have jurisdiction over it and the complaint against it was not moot.  Throughout these proceedings, and in the proceedings below, PDE has argued that pursuant to Section 1413(g) it was not required to provide any educational

10

services to S.V-W. until and unless the hearing officer ordered them.  Accordingly, prior to the
hearing officer's decision, PDE did not offer compensatory education and expressly stated that it
would only do so upon order of the hearing officer.  Only upon the conditions that the hearing
officer conduct a due process hearing and reach a decision would PDE pay any compensatory
education the hearing officer deemed due and owing.  Thus, only by obtaining the hearing
officer's decision was Plaintiff able to "change[]the legal relationship" between herself and PDE
thereby becoming a prevailing party.[8]

   Defendants argue that the IDEA's attorneys' fees provision cannot apply to PDE because
the IDEA does not make SEAs fiscal guarantors for failed charter schools.  Defendants rely on a
number of cases, including *Beard v. Teska*, 31 F.3d 942 (10th Cir. 1994), and *Whitehead ex rel.
Whitehead v. School Board for Hillsborough County*, 932 F. Supp. 1393 (M.D. Fla. 1996), that
have rejected the notion the IDEA makes every LEA into an agent of the SEA, thus rendering the
SEA liable under a *respondeat superior* theory for all of the LEA's fiscal liabilities arising out of
IDEA violations.  These cases are easily distinguishable.  They addressed the situation where
parents, who had prevailed against the LEA in a due process hearing, subsequently attempted to
enforce the decision against the SEA in a civil action in district court.  That they rejected this
attempt to extend liability to SEAs for each and every violation by an LEA of the IDEA has no
bearing on the issue at hand.  Here, Plaintiff's arguments are that her complaint against PDE
should not have been mooted, and that the hearing officer had jurisdiction to rule on Plaintiff's
due process complaint against PDE.  The IDEA's fee shifting provision does not differentiate in
any way between SEAs and LEAs, but instead creates an entitlement based solely on prevailing
party status.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Accordingly, once an SEA is properly subject to an

---

[8] Nothing in this decision suggests that IDEA funds could be used for the payment of attorneys' fees.  The statute
specifically prohibits such use.  34 C.F.R § 300.517(b)(1).

IDEA due process complaint, it risks a judgment imposing attorneys' fees should its opponent attain prevailing party status.

Defendants' reliance on *Gadsby ex rel. Gadsby v. Grasmick*, 109 F.3d 940 (4th Cir. 1997) is similarly misplaced.  Although Defendants correctly point out that the Fourth Circuit held that "[o]ne relevant factor to be considered by the district court in fashioning relief is the relative responsibility of each agency for the ultimate failure to provide a child with a free appropriate public education," that language is part of an assessment of whether the SEA or the LEA may be held liable for reimbursement costs of private school tuition.  *Id.* at 954–55.  The Court noted that "the remedy of reimbursement for private school tuition is an equitable remedy imposed at the discretion of the district court [and as such] there is no statutory language specifically authorizing such a remedy, much less designating what governmental entity must pay the costs of reimbursement and when."  *Id.*  In contrast, the IDEA expressly authorizes reasonable attorneys' fees for prevailing parties in the due process context.  Accordingly, the factors that the Fourth Circuit relied on in determining whether the equitable remedy of reimbursement costs should be borne by the SEA or the LEA are inapplicable to the analysis here.

For these reasons, Defendants' motion to dismiss will be denied.

An appropriate order follows.

**Dated**:  December 5, 2016

BY THE COURT:

/S/WENDY BEETLESTONE, J.

_____

WENDY BEETLESTONE, J.